UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAURI HUFFMAN,

    Plaintiff,                                   Case No. 13-12453
                                                   Honorable Thomas L. Ludington

v.

SPEEDWAY LLC,

    Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING CLAIMS**

Lauri Huffman worked for Speedway LLC from July 2011 through May 2013. In November 2012, she became pregnant, and in March of 2013, her doctor recommended various restrictions to keep her safe. Concluding that Huffman could not perform her job responsibilities given her doctor's restrictions, Speedway attempted to place her on leave under the Family and Medical Leave Act (FMLA). But Huffman was unwilling to do so. After she failed to return the requisite paperwork over a six-week period, Speedway terminated Huffman's employment based on job abandonment. She then filed a complaint alleging violations of the FMLA and Michigan's Elliot Larsen Civil Rights Act.

Huffman's FMLA claim is not ripe, and it will be dismissed. Because all that remains is a state law claim for pregnancy discrimination, the claim will be dismissed without prejudice to Huffman's ability to refile in state court.

# I

## A

In July 2011, Huffman was hired to act as a customer service representative in Speedway's Vassar, Michigan store. Four months later, in November, Huffman was promoted to shift leader (still with Speedway's Vassar, Michigan location).

Huffman had several duties and responsibilities as shift leader. A Speedway shift leader "[s]erves as the leader and oversees the retail operations during a designated shift" for any given Speedway location. Def.'s Mot. Ex. 9, at 1, ECF No. 13. Shift leaders "ensure that the store operates efficiently and in compliance with applicable Federal, State and local laws and Company policies." *Id*. Other responsibilities include training and coaching employees, ensuring necessary paperwork is completed, handling escalated customer concerns and emergencies, auditing inventory, maintaining a clean and organized store, and ensuring safe work practices. *Id*.

Jennifer Francis, store manager at the Vassar, Michigan Speedway during a portion of the time that Huffman worked there, clarified some of Huffman's duties as shift leader. *See* Francis Dep. 8, 17, *attached as* Def.'s Mot. Ex. 3. As a part of ensuring satisfactory customer service, Huffman was responsible for making sure that the tasks outlined in Speedway's Exceptional Customer Experience (ECE) worksheet were completed each shift. *Id*. at 10, 26. Those include, among others, food presentation tasks, inside presentation tasks (including restroom care), and outside presentation tasks. *See* Def.'s Mot. Ex. 10.

In November 2012, Huffman became pregnant, and notified Speedway "shortly thereafter." Pl.'s Resp. 6, ECF No. 16. On March 6, 2013, Huffman presented Ms. Francis with a note from her physician indicating that Huffman required simple limitations: a maximum of 8-

hour shifts with 15-minute breaks every 4 hours. Def.'s Mot. Ex. 21, at 3. Ms. Francis forwarded Huffman's restrictions to Richard Farran, Speedway's Human Resource Manager. *Id*. at 2. Because Huffman's restrictions did not impact her ability to perform the functions of a shift leader, Mr. Farran approved them. Huffman Dep. 97–98, *attached as* Def.'s Mot. Ex. 1.

Huffman visited her OB/GYN, Dr. Walter Yee, on April 3, 2013. Dr. Yee provided Huffman with discharge instructions that indicated she should "not perform activities" that could cause her to "fall or drop something on [her]self." Def.'s Mot. Ex. 22. Moreover, Dr. Yee recommended that Huffman take April 4, 2013, off of work because she was suffering from "hip pain secondary to pregnancy." Def.'s Mot. Ex. 23. Huffman delivered the information to Ms. Francis, who in turn forwarded it along to Mr. Farran.

After reviewing Dr. Yee's instructions and note, Mr. Farran decided that he needed additional information as to what Huffman could and could not do before he determined whether Speedway could accommodate her restrictions. So Mr. Farran asked Ms. Francis to find out what tasks Huffman was not comfortable performing. *See* Huffman Dep. 97; Francis Dep. 28–29. Ms. Francis conferred with Huffman, and Huffman wrote a list of nine tasks that she did not feel comfortable performing due to her pregnancy:

- Taking out heavy bags of trash

- Leaning into the bottle return bin (too deep to reach items)

- Lifting and changing BIBs

- Climbing the tall ladder

- Lifting propane tanks

- Lifting full tea urns

- Continuous up and down (bending, squatting) somedays, not all

    - lifting full crates of pop to get to the next crate in the cooler

    - standing for long periods of time

Def.'s Mot. Ex. 24.  Ms. Francis then memorialized the list in an email to Mr. Farran, which she sent on April 9, 2013.  *Id.*

After reviewing Huffman's list, Mr. Farran still required additional information to decide if her restrictions could be accommodated.  So he instructed Ms. Francis to ask Huffman to return to Dr. Yee so that Dr. Yee could fill out a Fitness for Duty form and indicate on a blank ECE worksheet which tasks Huffman could not perform.  Huffman complied, and on April 10, 2013, Dr. Yee filled out both forms.  *See* Def.'s Mot. Exs. 10, 25.  Huffman then delivered the two forms to Ms. Francis, and Ms. Francis forwarded them to Mr. Farran.  Huffman Dep. 118.

On the Fitness for Duty form, Dr. Yee indicated that, through her delivery, Huffman could perform "Light medium work: Lifting 20[lbs] max & frequently lifting up to #10[lbs]." Def.'s Mot. Ex. 25.  He also noted that Huffman could occasionally bend, squat, kneel, reach, stand, and walk, but that she could not climb at all.  *Id.*  Finally, Dr. Yee indicated that Huffman should stay off the "large ladder," have a stool to sit on, and avoid lifting things that could fall or drop on her abdomen.  *Id.*

On the ECE worksheet he completed, Dr. Yee indicated that the following tasks "may be avoided for the duration of [Huffman's] pregnancy":

    - Speedy Tea Available/Fresh

    - Wash/Rinse/Sanitize Speedy Tea Urn

    - Clean Tops/Under Machines/Inside Cabinets

    - Stock/Clean Cooler and Cooler Doors

    - Check/Empty Inside Trash

- Stock Outside

- Check/Empty Outside Trash

- Clean Baseboards

- Clean Walls Where Needed/Clean Windows

- Wash Restroom Doors/Frames/Walls

- Clean Cooler Floor, Door Frames & Under Product

Def.'s Mot. Ex. 10.  As Speedway points out in its motion, according to the ECE worksheet, each of the first seven tasks must be completed each and every shift.  *Id*; *see also* Def.'s Mot. 13–14.  The final four tasks must be completed once each week.  Def.'s Mot. Ex. 10.

Mr. Farran examined Huffman's restrictions, as indicated by Dr. Yee, and concluded that Speedway "could not accommodate the restrictions that she presented."  Farran Dep. 30, *attached as* Def.'s Mot. Ex. 2.

**B**

Speedway maintains a leave of absence policy (the Policy) that applied to Huffman in 2012 and 2013.  *See* Policy 1, *attached as* Def.'s Mot. Ex. 19.  The Policy governs both personal leave, *id*. at 7–9, and leave under the FMLA, *id*. at 1–7.

Up to twelve workweeks of unpaid FMLA leave is available for Speedway employees "with 12 or more months of service, who have worked 1,250 or more hours in the preceding 12 months, and who work at a worksite with 50+ employees within a 75-mile radius . . . ."  Policy 1.  An employee who satisfies the preceding criteria is entitled to FMLA leave if she suffers from a documented "serious health condition" that makes her unable to perform the functions of her job.  *Id*.  Such a "serious health condition" can result from a pregnancy.  A note on page one of the Policy establishes that "FMLA leave may begin prior to the birth of your child if you are unable

to work due to medical reasons." *Id*. Indeed, under the Policy, a "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves . . . [a]ny period of incapacity due to pregnancy, or for prenatal care." *Id*. at 2.

## C

After concluding that Huffman could not satisfy her work responsibilities due to her physician's restrictions, Mr. Farran informed Ms. Francis that Speedway would offer Huffman a leave of absence. Ms. Francis then called Huffman on April 11, 2013, and informed her that she "could not return to work until [she] was off the restrictions that the doctor gave [her]." Huffman Dep. 119. Huffman did not agree that her restrictions should keep her from working. *Id*. Nevertheless, Ms. Francis forwarded a request for leave of absence paperwork form to Speedway's leave processor, Jennifer Garrett.

Ms. Garrett sent the leave of absence paperwork directly to the Vassar, Michigan store (via email) on April 16, 2013. *See* Def.'s Mot. Ex. 27. The paperwork indicated that Huffman was eligible for FMLA leave, *id*. at 2, but in order for Speedway to determine whether she qualified for FMLA leave, she needed to return the enclosed certification form by May 4, 2013. Although Huffman received the paperwork and understood that it was due by May 4, 2013, she decided that she "wasn't going to fill them out" because she felt that she did not need to take leave. Huffman Dep. 122–23.

On April 16, 2013, Huffman emailed Mr. Farran to inform him that she did "not wish to be on leave" or be "forced" to take leave. Def.'s Mot. Ex. 28. She indicated that she would not fill out the FMLA paperwork because she was "willing and able to work." *Id*. In response, Mr. Farran called Huffman and explained "that the paperwork had to be turned in for [her] to be approved for the FMLA" leave that was necessitated, in his opinion, by her doctor's restrictions.

Huffman Dep. 127–28. Mr. Farran also explicitly told Huffman that if she did not complete the leave paperwork, she was "at risk of being terminated for job abandonment." *Id*. at 128. Huffman remained adamant, and did not comply.

On May 7, 2013, three days after Huffman's paperwork was due, Ms. Garrett sent Huffman an FMLA denial notice with the following letter:

> On 4/16/13, a leave packet was sent to you for completion in connection with your Request for a Leave of Absence. As stated in the packet, your leave paperwork was due back to the Leave Department by 5/4/13. As of today, your paperwork has not been received. As such, FMLA leave for this period is **denied**. You may still be eligible for a personal leave of absence, but you must return your completed leave packet by **5/17/13**. **If Speedway does not receive your completed leave packet by this date, your employment may be terminated**.

Def.'s Mot. Ex. 7 (emphasis in original). Huffman received the letter on May 14, 2013. Huffman Dep. 129. By that time, she had already retained an attorney. *Id*. at 130. Huffman did not have any conversations with anyone from Speedway after that point. *Id*. at 132. When she failed to return the leave of absence paperwork by May 17, 2013, as directed, Speedway terminated Huffman's employment for job abandonment on May 29, 2013.

**D**

Less than one month later, on June 4, 2013, Huffman filed a complaint against Speedway alleging two claims: (1) violation of the FMLA when Speedway "ordered [Huffman] to file a claim for FMLA when she did not need or want to[,]" and (2) violation of Michigan's Elliott Larsen Civil Right's Act based on pregnancy discrimination. Pl.'s Compl. ¶¶ 34, 41, ECF No. 1. Subsequently, Huffman filed a first amended complaint asserting the same two claims but clarifying the proper defendant, Speedway LLC. On February 28, 2014, Speedway filed a motion for summary judgment.

## II

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The focus must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). All justifiable inferences from the evidence must be drawn in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III

Huffman presents a federal claim under the FMLA and a state law claim under Elliot Larsen. But her federal claim is not yet ripe and it will be dismissed. Because her state law claim is more appropriately adjudicated in state court, Huffman's Elliot Larsen claim will be dismissed without prejudice.

### A

Huffman adequately summarizes her FMLA claim as follows: "[she] was discriminated against for opposing the unlawful practice and use of FMLA by [Speedway] when it tried to force her to take FMLA [leave] . . . ." Pl.'s Resp. 14. Thus, Huffman's claim is what the Sixth Circuit has recognized as an "involuntary-leave claim" under the FMLA, where an employer forces an employee to take FMLA leave against the employee's wishes. *See Wysong v. Dow Chem. Co.*, 503 F.3d 441, 449 (6th Cir. 2007). In *Wysong*, the court explained what an

involuntary-leave claim entails: "An involuntary-leave claim is really a type of interference claim. An employee may have a claim under [29 U.S.C.] § 2615(a)(1) when an employer forces an employee to take FMLA leave when the employee does not have a 'serious health condition' that precludes her from working." *Id*.

But the court in *Wysong* went on to make a crucial clarification—"However, the employee's claim ripens only when and if the employee seeks FMLA leave at a later date, and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past." *Id*. So although the court "recognize[d] that an employer who forces an employee to take leave may create a claim under the FMLA," to maintain such a claim, a plaintiff must "allege also that she later requested FMLA leave, but that [the employer] refused, based on the fact that she had already used up her available FMLA leave." *Id*. at 449, 450.

Nowhere in Huffman's amended complaint does she allege that she requested FMLA leave from Speedway after it attempted to put her on involuntary leave. *See* Pl.'s Am. Compl., ECF No. 9. Instead, it is undisputed that Speedway attempted to place Huffman on leave, she refused to return the requisite paperwork, her employment was terminated, and she has not spoken with a Speedway representative since. It is also undisputed that Huffman never requested FMLA leave but was unable to obtain it because she had been previously forced to use it. Accordingly, Huffman has not satisfied her burden of alleging a claim under the FMLA based on involuntary leave. This claim will be dismissed.

**B**

Huffman's only other claim is a state law claim for pregnancy discrimination. But "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was

removed." *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (citation omitted). Because exercising supplemental jurisdiction over Huffman's remaining claim would not foster judicial economy and would result in "needlessly resolving issues of state law[,]" *id*. at 953, Huffman's pregnancy-discrimination claim under Elliot Larsen will be dismissed without prejudice to her ability to refile in an appropriate state court forum.

### IV

Accordingly, it is **ORDERED** that Speedway's motion for summary judgment, ECF No. 13, is **GRANTED** in part and **DENIED** in part.

It is further **ORDERED** that Huffman's FMLA claim is **DISMISSED** with prejudice.

It is further **ORDERED** that Huffman's Elliot Larsen claim is **DISMISSED** without prejudice. This is a final order and closes the case.

Dated: May 1, 2014                                                    s/Thomas L. Ludington
                                                                                  THOMAS L. LUDINGTON
                                                                                  United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 1, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS