UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAURI HUFFMAN,

    Plaintiff,

v.

SPEEDWAY LLC,

    Defendant.
_____/

Case No. 13-12453
Honorable Thomas L. Ludington

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION, VACATING JUDGMENT, AND DISMISSING HER COMPLAINT WITH PREJUDICE**

Lauri Huffman worked for Speedway LLC from July 2011 through May 2013. In November 2012, she became pregnant, and in March of 2013, her doctor recommended various restrictions to keep her safe. Concluding that Huffman could not perform her job responsibilities given her doctor's restrictions, Speedway attempted to place her on leave under the Family and Medical Leave Act (FMLA). But Huffman was unwilling to take leave. After she failed to return the requisite paperwork over a six-week period, Speedway terminated Huffman's employment based on job abandonment. She then filed a complaint alleging violations of the FMLA and Michigan's Elliott Larsen Civil Rights Act (Elliott Larsen).

Speedway filed a motion for summary judgment, and the Court concluded that Huffman's FMLA claim was not ripe; the Court then dismissed the FMLA claim. Noting that only Huffman's state law claim for pregnancy discrimination remained, the Court dismissed that claim without prejudice to Huffman's ability to refile in state court.

Huffman subsequently filed a motion for reconsideration, contending that the Court had original jurisdiction over the Michigan state law claim—not supplemental jurisdiction—by way

of complete diversity between the parties. Thus, according to Huffman, the Court erred in dismissing the Elliott Larsen claim without prejudice rather than addressing it on the merits. Huffman is correct. She pled both federal question and diversity jurisdiction in her complaint, *see* Pl.'s Compl. ¶9, ECF No. 1, and indicated that the amount in controversy exceeds $75,000, *id*. ¶ 10. Huffman is quite right and her motion for reconsideration will be granted. The Court will address the merits of her Elliott Larsen claim for pregnancy discrimination.

**I**

Elliott Larsen prohibits an employer from "discriminating against individuals on the basis of sex with respect to a condition of employment[,]" and "discrimination because of a woman's pregnancy is a form of discrimination because of sex." *Haynie v. State*, 664 N.W.2d 129, 133–34 (Mich. 2003). Although Huffman has not raised a claim for pregnancy discrimination under Title VII, Elliott Larsen claims are analyzed "under the same framework as Title VII claims[,]" and so the Court will analyze Huffman's claim accordingly. *See Latowski v. Northweeds Nursing Ctr.*, 549 F. App'x 478, 483 n.2 (6th Cir. 2013) (citing *Sutherland v. Mich. Dep't of Traesury*, 344 F.3d 603, 614 n.4 (6th Cir. 2003)).

Huffman can prove her pregnancy discrimination claim with either direct or indirect evidence. *Ensley–Gaines v. Runyon*, 100 F.3d 1220, 1224 (6th Cir. 1996). She claims she has advanced both.

**A**

Direct evidence "is that evidence which, if believed, requires a conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 470 (6th Cir. 2005) (citation omitted). Once a plaintiff proffers direct evidence of discrimination, the burden of persuasion "shifts to the

defendant to show that it would have terminated the plaintiff's employment had it not been motivated by discrimination." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) (collecting cases).

Huffman argues she has offered direct evidence that Speedway discriminated against her: "[Speedway] admittedly knew that [Huffman] was pregnant. Nevertheless, [Speedway] was forcing [Huffman] to take a leave of absence that was unnecessary simply because she was pregnant. . . . Simply put, sufficient undisputed direct evidence exists to preclude summary judgment in favor of [Speedway], as it is [Huffman] that would be actually entitled to summary judgment." Pl.'s Resp. 16, ECF No. 16.

Contrary to Huffman's contention, the mere fact that Speedway knew she was pregnant and attempted to impose an involuntary leave does not "require a conclusion" that her eventual termination was motivated by unlawful discrimination. Speedway attempted to place Huffman on FMLA leave because of the specific restrictions her physician imposed, not simply because she was pregnant. This is substantiated by the evidence: After Huffman learned that she was pregnant, and when her doctor first placed restrictions upon her ability to work, Speedway accommodated Huffman because the restrictions did not interfere with her ability to perform assigned tasks. Speedway did not attempt to terminate her employment or place her on leave.

When Huffman's physician imposed additional restrictions, Speedway representatives asked the doctor to identify the assigned duties Huffman should not perform; Speedway did not automatically attempt to place her on leave because she was pregnant. Based on the subsequent recommendation of Huffman's doctor, Speedway representatives concluded that Huffman could no longer perform the duties of her position, and only then was she extended FMLA leave. When Huffman refused to take leave, and then did not return the necessary paperwork for

requesting leave, Speedway terminated her employment for job abandonment—just as it had previously warned it would. *See* Huffman Dep. 128, *attached as* Def.'s Mot. Ex. 1, ECF No. 13.

The fact that Speedway attempted to place Huffman on FMLA leave while aware of her pregnancy does not require a conclusion that unlawful discrimination motivated Speedway's decision to later terminate Huffman's employment. To conclude that Huffman's termination demonstrates an anti-pregnancy animus rather than a non-discriminatory concern about her refusal to return the leave paperwork requires an inference and thus is not direct evidence of discrimination. *See Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) ("direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group.").

Huffman also argues that Speedway's leave policy "is discriminatory on its face towards pregnant employees" because "just for being pregnant, [she] was forced to take FMLA leave . . . ." Pl.'s Resp. 17. A leave policy that facially discriminates on the basis of pregnancy constitutes direct evidence of discrimination. *See Reeves v. Swift Transp. Co., Inc.*, 446 F.3d 637, 640 (6th Cir. 2006) ("In her brief, Reeves argues in effect that the terms of Swift's light-duty policy constitute direct evidence of discrimination, but she is incorrect because Swift's light-duty policy is pregnancy-blind."). Consistent with *Reeves*, however, Speedway's leave policy does not differentiate between pregnant employees and those who are not; the policy simply provides an employee with a leave of absence when that employee cannot perform the functions of his or her position due to a serious health condition. Indeed, Speedway did not attempt to place Huffman on FMLA leave when it first learned she was pregnant "shortly" after November 2012. *See* Pl.'s Resp. 6. Nor did Speedway attempt to place Huffman on FMLA leave when she first presented

pregnancy-related work restrictions on March 6, 2013. *See* Def.'s Mot. Ex. 21, at 3. Rather, Speedway attempted to place Huffman on leave only after her physician imposed additional restrictions in April 2013—restrictions that Speedway concluded foreclosed Huffman's ability to perform her work responsibilities. *See* Farran Dep. 30, *attached as* Def.'s Mot. Ex. 2. So there is no evidence that Speedway's leave policy differentiates between pregnant employees and those that are not.

Huffman has not presented direct evidence of discrimination because nothing she has offered requires the conclusion that her termination was motivated by discrimination. Thus, the Court will address Huffman's pregnancy discrimination claim under the indirect evidence framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

**B**

Under the indirect evidence framework, Huffman has the burden "of proving a prima facie case of discrimination; if she is successful, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions; finally, the plaintiff has the opportunity to prove that the proffered reason is pretextual." *Latowski*, 549 F. App'x at 483. Huffman's prima facie burden includes the following four elements: "(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." *Id*; *see also DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 390 (6th Cir. 2005). The prima facie case "is not meant to be an onerous burden, and the amount of evidence a plaintiff must produce on the elements is not great." *Id*. at 390.

For purposes of its summary judgment motion, Speedway concedes the first three elements of Huffman's prima facie case. *See* Def.'s Mot. 17. Although it contests the fourth element, Speedway misstates what that element requires. Speedway contends that the fourth prima facie element of a pregnancy discrimination claim requires a plaintiff to demonstrate that "similarly situated individuals outside of the protected class were treated more favorably" than those in the protected class. *Id.*

But as explained above, the fourth prima facie element requires only that a plaintiff demonstrate "there is a nexus between [the] pregnancy and the adverse employment decision." *Latowski*, 549 F. App'x at 483. While a plaintiff can prove the fourth element of the prima facie case "through comparison to another employee who is similarly situated," *id.* (quoting *Ensley–Gaines*, 100 F.3d at 1226), there are other ways to skin this cat, including the temporal proximity between an employer learning of an employee's pregnancy and that employee's termination. *See*, *e.g.*, *Megivern v. Glacier Hills Inc.*, 519 F. App'x 385, 395–96 (6th Cir. 2013) (finding sufficient nexus between pregnancy and adverse action where plaintiff announced her pregnancy in April 2010 and was terminated on May 26, 2010).

Notably, although Huffman can establish a nexus between her termination and her pregnancy without reference to similarly-situated employees, she does not attempt to do so. Instead, she offers only her testimony "that [Speedway] allowed another employee, a Chelsea Genevieve, [sic] (*who unlike* [*Huffman*]*, was not pregnant*), to continue working on restrictions, despite the fact that Ms. Genevieve was similarly situated to [Huffman] in terms of her inability to work." Pl.'s Resp. 18 (emphasis in original). Huffman then provides, all in a footnote, excerpts from her deposition to substantiate her claim that a similarly-situated employee—who was not pregnant—was allowed to work despite work restrictions:

Q: Since you were terminated from Speedway in May of 2013, have you spoken to anyone who still works at Speedway?

A: Yes.

Q: And who have you spoken to?

A: Ashley Marrow.

  *   *   *   *   *

Q: Tell me what you discussed.

A: She told me that another girl was allowed to work on work restrictions.

Q: And what was that other girl's—that other girl's name?

A: Chelsea Genovieve.

Q: And who was Chelsea Genovieve?

A: Another employee at Speedway.

Q: At that store?

A: Yes.

Q: And what did . . . . Do you know what condition, medical condition Chelsea Genovieve had?

A: She had a hurt knee.

  *   *   *   *   *

Q: Was she off work for any period of time because of that injury?

A: Yes, her doctor took her off.

  *   *   *   *   *

Q: Do you know if she was under any restrictions when she came back?

A: Yes.

Q: And how do you know that?

> A: I do remember her—I never seen her doctor's restrictions but I was informed that she needed to stay off her knee and that she didn't have to do like baseboards and get on her knee.
>
> Q: And who informed you of this?
>
> A: Jennifer Francis.
>
> \* \* \* \* \*
>
> A: . . . But I was informed she went back to work after I left and worked on those same restrictions.
>
> Q: And that is what Chelsea Genovieve told you; correct?
>
> A: Chelsea Genovieve also told me this, yes, but Ashley Marrow also told me the same thing. I was told by three people actually.
>
> \* \* \* \* \*
>
> Q: And what restrictions did Chelsea tell you she was allowed to return to work with?
>
> A: I know there was no bending or lifting. I do recall her saying that. And there was a weight restriction but I do not remember exactly how much. And staying off ladders was the other one.

Huffman Dep. 29–36; *see also* Pl.'s Resp. 18 n.13. Notably, Huffman offers no other evidence to demonstrate that there was a causal nexus between her pregnancy and Speedway's decision to terminate her employment.

The evidence Huffman advances does not suffice to create a genuine issue of material fact at the summary judgment stage. All Huffman offers is what "three people" told her about another Speedway employee, Chelsea Genovieve. Huffman claims that Ashley Marrow told her "that another girl was allowed to work on work restrictions." Huffman claims that Ms. Francis told her this employee "needed to stay off her knee and that she didn't have to do like baseboards and get on her knee." Finally, Huffman asserts that "[she] was informed" this other employee "went back to work . . . and worked on those same restrictions."

It is clear that the evidence Huffman offers concerning this "similarly-situated" employee is comprised exclusively of what other individuals have told her—statements that Huffman offers for their truth. Accordingly, that evidence constitutes hearsay under Federal Rule of Evidence 801. Huffman offers no exception to the hearsay rule covering any of the purported statements, and "[h]earsay evidence may not be considered on summary judgment." *Jacklyn*, 176 F.3d at 927 (citing *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)).

Huffman does not offer testimony from any of the individuals she identified during her deposition (despite having deposed at least Ms. Francis) to corroborate her hearsay statements. Nor does she advance sworn affidavits from any of these individuals. Thus, the evidence concerning Ms. Genovieve is inadmissible and is not proper for consideration here. Because Huffman offers no other evidence to demonstrate that there was a causal nexus between her pregnancy and her eventual termination, she has not satisfied her prima facie burden and her Elliott Larsen claim will be dismissed.

## II

Accordingly, it is **ORDERED** that Huffman's motion for reconsideration, ECF No. 20, is **GRANTED**.

It is further **ORDERED** that the Court's May 1, 2014 Judgment, ECF No. 19, is **VACATED**.

It is further **ORDERED** that Huffman's Elliot Larsen claim is **DISMISSED** with prejudice. This is a final order and closes the case.

Dated: May 9, 2014                           s/Thomas L. Ludington
                                             THOMAS L. LUDINGTON
                                             United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 9, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS
