UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAURI HUFFMAN,

                Plaintiff,                    Case No. 13-cv-12453

v.                                      Honorable Thomas L. Ludington

SPEEDWAY LLC,

                Defendant.

_____/

## ORDER DENYING PLAINTIFF'S *HIRSCH* REMAND MOTION

Plaintiff Lauri Huffman began this case against Defendant Speedway LLC on June 4, 2013. ECF No. 1. On July 17, 2013, Huffman filed her first amended complaint. ECF No. 9. Defendant Speedway moved for summary judgment on February 28, 2014. ECF No. 13. Defendant's motion was granted and Plaintiff's amended complaint dismissed on May 1, 2014. ECF Nos. 18 & 19. Huffman timely appealed on May 23, 2014. ECF No. 25. Despite being divested of jurisdiction by Huffman's appeal, she seeks a *Hirsch* remand, requesting that this Court revisit its May 1, 2014 decision dismissing her FMLA claim. ECF No. 27. If such an order were to issue, Plaintiff would then bring a Federal Rule of Civil Procedure 60(b) motion seeking relief from the Court's May 1, 2014 judgment or ask that her remand motion be taken up on the merits as though it were a Rule 60(b) motion. Plaintiff's amended complaint was properly dismissed, however, because it only stated a claim for interference with Plaintiff's FMLA rights. For that reason, Huffman's *Hirsch* remand motion will be denied and her appeal may proceed.

## I.

In Huffman's July 17, 2013 amended complaint she alleges under "Count I VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT OF 1993 (FMLA), 29 USC

2601, et seq." that her FMLA rights were violated when Speedway attempted to force her to use her FMLA leave and then terminated her employment when she refused.

**A.**

In July 2011, Huffman was hired to act as a customer service representative in Speedway's Vassar, Michigan store. Four months later, in November, Huffman was promoted to shift leader (still with Speedway's Vassar, Michigan location).

Huffman had several duties and responsibilities as shift leader. A Speedway shift leader "[s]erves as the leader and oversees the retail operations during a designated shift" for any given Speedway location. ECF No. 13, Def. Mot. Ex. 9 at 1. Shift leaders "ensure that the store operates efficiently and in compliance with applicable Federal, State and local laws and Company policies." *Id*. Other responsibilities include training and coaching employees, ensuring necessary paperwork is completed, handling escalated customer concerns and emergencies, auditing inventory, maintaining a clean and organized store, and ensuring safe work practices. *Id*.

Jennifer Francis, store manager at the Vassar, Michigan Speedway during a portion of the time that Huffman worked there, clarified some of Huffman's duties as shift leader. *See* Francis Dep. 8, 17, *attached as* ECF No. 13, Def. Mot. Ex. 3. As a part of ensuring satisfactory customer service, Huffman was responsible for making sure that the tasks outlined in Speedway's Exceptional Customer Experience (ECE) worksheet were completed each shift. *Id*. at 10, 26. Those include, among others, food presentation tasks, inside presentation tasks (including restroom care), and outside presentation tasks. *See* ECF No. 13, Def. Mot. Ex. 10.

In November 2012, Huffman became pregnant, and notified Speedway "shortly thereafter." ECF No. 16, Pl.'s Resp. at 6. On March 6, 2013, Huffman presented Ms. Francis with a note from her physician indicating that Huffman required simple limitations: a maximum

of 8-hour shifts with 15-minute breaks every 4 hours. ECF No. 13, Def. Mot. Ex. 21, at 3. Ms. Francis forwarded Huffman's restrictions to Richard Farran, Speedway's Human Resource Manager. *Id.* at 2. Because Huffman's restrictions did not impact her ability to perform the functions of a shift leader, Mr. Farran approved them. Huffman Dep. 97–98, *attached as* ECF No. 13, Def. Mot. Ex. 1.

Huffman visited her OB/GYN, Dr. Walter Yee, on April 3, 2013. Dr. Yee provided Huffman with discharge instructions that indicated she should "not perform activities" that could cause her to "fall or drop something on [her]self." ECF No. 13, Def. Mot. Ex. 22. Moreover, Dr. Yee recommended that Huffman take April 4, 2013, off of work because she was suffering from "hip pain secondary to pregnancy." ECF No. 13, Def. Mot. Ex. 23. Huffman delivered the information to Ms. Francis, who in turn forwarded it along to Mr. Farran.

After reviewing Dr. Yee's instructions and note, Mr. Farran decided that he needed additional information about what Huffman could and could not do before he determined whether Speedway could accommodate her restrictions. So Mr. Farran asked Ms. Francis to find out what tasks Huffman was not comfortable performing. *See* Huffman Dep. 97; Francis Dep. 28–29. Ms. Francis conferred with Huffman, and Huffman wrote a list of nine tasks that she did not feel comfortable performing due to her pregnancy:

- Taking out heavy bags of trash

- Leaning into the bottle return bin (too deep to reach items)

- Lifting and changing BIBs

- Climbing the tall ladder

- Lifting propane tanks

- Lifting full tea urns

- 3 -

- Continuous up and down (bending, squatting) somedays, not all

- lifting full crates of pop to get to the next crate in the cooler

- standing for long periods of time

ECF No. 13, Def. Mot. Ex. 24. Ms. Francis then memorialized the list in an email to Mr. Farran, which she sent on April 9, 2013. *Id.*

After reviewing Huffman's list, Mr. Farran still required additional information to decide if her restrictions could be accommodated. So he instructed Ms. Francis to ask Huffman to return to Dr. Yee so that Dr. Yee could fill out a Fitness for Duty form and indicate on a blank ECE worksheet which tasks Huffman could not perform. Huffman complied, and on April 10, 2013, Dr. Yee filled out both forms. *See* ECF No. 13, Def. Mot. Exs. 10, 25. Huffman then delivered the two forms to Ms. Francis, and Ms. Francis forwarded them to Mr. Farran. Huffman Dep. 118.

On the Fitness for Duty form, Dr. Yee indicated that, through her delivery, Huffman could perform "Light medium work: Lifting 20[lbs] max & frequently lifting up to #10[lbs]." ECF No. 13, Def. Mot. Ex. 25. He also noted that Huffman could occasionally bend, squat, kneel, reach, stand, and walk, but that she could not climb at all. *Id.* Finally, Dr. Yee indicated that Huffman should stay off the "large ladder," have a stool to sit on, and avoid lifting things that could fall or drop on her abdomen. *Id.*

On the ECE worksheet he completed, Dr. Yee indicated that the following tasks "may be avoided for the duration of [Huffman's] pregnancy":

- Speedy Tea Available/Fresh

- Wash/Rinse/Sanitize Speedy Tea Urn

- Clean Tops/Under Machines/Inside Cabinets

- Stock/Clean Cooler and Cooler Doors

- 4 -

- Check/Empty Inside Trash

- Stock Outside

- Check/Empty Outside Trash

- Clean Baseboards

- Clean Walls Where Needed/Clean Windows

- Wash Restroom Doors/Frames/Walls

- Clean Cooler Floor, Door Frames & Under Product

ECF No. 13, Def. Mot. Ex. 10. As Speedway emphasized in its motion for summary judgment, according to the ECE worksheet, each of the first seven tasks must be completed each and every shift. *Id*; *see also* ECF No. 13, Def. Mot. Ex. 13–14. The final four tasks must be completed once each week. ECF No. 13, Def. Mot. Ex. 10.

Mr. Farran examined Huffman's restrictions, as indicated by Dr. Yee, and concluded that Speedway "could not accommodate the restrictions that she presented." Farran Dep. 30, *attached as* ECF No. 13, Def. Mot. Ex. 2.

**B.**

Speedway maintains a leave of absence policy (the Policy) that applied to Huffman in 2012 and 2013. *See* Policy 1, *attached as* ECF No. 13, Def. Mot. Ex. 19. The Policy governs both personal leave, *id*. at 7–9, and leave under the FMLA, *id*. at 1–7.

Up to twelve workweeks of unpaid FMLA leave is available for Speedway employees "with 12 or more months of service, who have worked 1,250 or more hours in the preceding 12 months, and who work at a worksite with 50+ employees within a 75-mile radius . . . ." Policy 1. An employee who satisfies the preceding criteria is entitled to FMLA leave if she suffers from a documented "serious health condition" that makes her unable to perform the functions of her job.

*Id.* Such a "serious health condition" can result from a pregnancy. A note on page one of the Policy establishes that "FMLA leave may begin prior to the birth of your child if you are unable to work due to medical reasons." *Id.* Indeed, under the Policy, a "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves . . . [a]ny period of incapacity due to pregnancy, or for prenatal care." *Id.* at 2.

## C.

After concluding that Huffman could not satisfy her work responsibilities due to her physician's restrictions, Mr. Farran informed Ms. Francis that she was eligible for a leave of absence. Ms. Francis then called Huffman on April 11, 2013, and informed her that she "could not return to work until [she] was off the restrictions that the doctor gave [her]." Huffman Dep. 119. Huffman did not agree that her restrictions should keep her from working. *Id.* Nevertheless, Ms. Francis forwarded a request for leave of absence paperwork form to Speedway's leave processor, Jennifer Garrett.

Ms. Garrett sent the leave of absence paperwork directly to the Vassar, Michigan store (via email) on April 16, 2013. *See* ECF No. 13, Def. Mot. Ex. 27. The paperwork reflected that Huffman was eligible for FMLA leave, *id.* at 2, but in order for Speedway to determine whether she qualified for FMLA leave, she needed to return the enclosed certification form by May 4, 2013. Although Huffman received the paperwork and understood that it was due by May 4, 2013, she decided that she "wasn't going to fill them out" because she felt that she did not need to take leave. Huffman Dep. 122–23.

On April 16, 2013, Huffman emailed Mr. Farran to inform him that she did "not wish to be on leave" or be "forced" to take leave. ECF No. 13, Def. Mot. Ex. 28. She indicated that she would not fill out the FMLA paperwork because she was "willing and able to work." *Id.* In

response, Mr. Farran called Huffman and explained "that the paperwork had to be turned in for [her] to be approved for the FMLA" leave that was necessitated, in his opinion, by her doctor's restrictions. Huffman Dep. 127–28. Mr. Farran also explicitly told Huffman that if she did not complete the leave paperwork, she was "at risk of being terminated for job abandonment." *Id*. at 128. Huffman remained adamant, and did not comply.

On May 7, 2013, three days after Huffman's paperwork was due, Ms. Garrett sent Huffman an FMLA denial notice with the following letter:

> On 4/16/13, a leave packet was sent to you for completion in connection with your Request for a Leave of Absence. As stated in the packet, your leave paperwork was due back to the Leave Department by 5/4/13. As of today, your paperwork has not been received. As such, FMLA leave for this period is **<u>denied</u>**. You may still be eligible for a personal leave of absence, but you must return your completed leave packet by **5/17/13**. **If Speedway does not receive your completed leave packet by this date, your employment may be terminated**.

ECF No. 13, Def. Mot. Ex. 7 (emphasis in original). Huffman received the letter on May 14, 2013. Huffman Dep. 129. By that time, she had already retained an attorney. *Id*. at 130. Huffman did not have any conversations with anyone from Speedway after that point. *Id*. at 132. When she failed to return the leave of absence paperwork by May 17, 2013, as directed, Speedway terminated Huffman's employment for job abandonment on May 29, 2013.

## D.

Less than one month later, on June 4, 2013, Huffman filed a complaint against Speedway alleging two claims: (1) violation of the FMLA when Speedway "ordered [Huffman] to file a claim for FMLA when she did not need or want to[,]" and (2) violation of Michigan's Elliott Larsen Civil Rights Act based on pregnancy discrimination. ECF No. 1 at ¶¶ 34, 41. Subsequently, Huffman filed a first amended complaint asserting the same two claims but

clarifying the proper defendant, Speedway LLC. On February 28, 2014, Speedway filed a motion for summary judgment.

The motion was granted on May 1, 2014 and Huffman's FMLA claim was dismissed in accordance with *Wysong v. Dow Chemical*, 503 F.3d 441, 449-50 (6th Cir. 2007). Under *Wysong* the Sixth "recognize[d] that an employer who forces an employee to take leave may create a claim under the FMLA," to maintain such a claim, a plaintiff must "allege also that she later requested FMLA leave, but that [the employer] refused, based on the fact that she had already used up her available FMLA leave." ECF No. 18, Op. and Order of May 1, 2014 at 9 (quoting *Wysong*, 503 F.3d at 449, 450).

Huffman now challenges that opinion but not on the ground that her interference claim was wrongly decided. Instead, she claims that the Court dismissed her amended complaint improperly because it only addressed her FMLA interference claim while her amended complaint stated a claim under both the interference and retaliation theories of FMLA liability. ECF No. 27 at 11. She asks that her *Hirsch* remand motion be granted so that Court may take up her Federal Rule of Civil Procedure 60(b) motion and correct the erroneous dismissal of her amended complaint so that her retaliation claim may proceed. *Id*. at 14.

## II.

Federal Rule of Civil Procedure 60(b) provides that a court may relieve a party from a final judgment because of, among other things, "(1) mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence . . . ." FED. R. CIV. P. 60(b). A motion under Rule 60(b)(1) is

> intended to provide relief to a party in only two instances: (1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order.

*Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000) (quoting *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999)). "[T]he word "mistake" as used in Rule 60(b)(1) encompasses any type of mistake or error on the part of the court, including judicial mistake as to applicable law." *Barrier v. Beaver*, 712 F.2d 231, 234 (6th Cir. 1983).

The Sixth Circuit has established that when an appeal is pending from a district court's judgment, the district court is deprived of jurisdiction to issue a final ruling on a Rule 60(b) motion. *Post v. Bradshaw*, 422 F.3d 419, 421 (6th Cir. 2005). The Sixth Circuit has, however, provided for a procedure by which a final judgment may be reconsidered by a district court, despite an appeal having been taken. The procedure calls for a petitioner to "file his motion in the District Court. If that court indicates that it will grant the motion, the appellant should then make a motion in [the appeals court] for a remand of the case in order that the District Court may grant the motion." *First Nat'l Bank of Salem, Ohio v. Hirsch*, 535 F.2d 343, 346 (6th Cir. 1976). If the district court is not disposed to grant the motion, "the appeal will be considered in regular course." *Id*.

This procedural device has come to be known as a *Hirsch* remand motion. When such a motion is filed with a district court it is considered as both a *Hirsch* remand motion and a substantive Rule 60(b) motion. *Adkins v. Jeffreys*, 327 F. App'x 537, 539-40 (6th Cir. 2009). While a district court does not possess jurisdiction to decide the Rule 60(b) motion, it may consider the merits presented as part of the movant's Rule 60(b) motion. *Id*. A district court does not abuse its discretion by discussing the merits of the Rule 60(b) motion when explaining why it is granting or denying the movant's *Hirsch* remand motion. *Id*.

- 9 -

## III.

Plaintiff contends that this Court should grant her *Hirsch* remand motion and, in turn, her Rule 60(b)(1) motion because it made a mistake of law in its Opinion and Order of May 1, 2014. Specifically, Plaintiff claims that the Court improperly dismissed her amended complaint following Defendant's summary judgment motion. It is Plaintiff's position that her amended complaint stated a valid claim of both interference and retaliation under the Family and Medical Leave Act. Thus, according to Plaintiff, when the Court granted Defendant's motion for summary judgment it dismissed only her interference claim.

Huffman relies primarily on *Wysong v. Dow Chemical* which states that "a complaint need only provide 'the defendant [with] fair notice of what the ... claim is and the grounds upon which it rests.'" 503 F.3d 441, 446 (6th Cir. 2007) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (alterations in original). Plaintiff claims that under Wysong, merely stating a claim for violation of the FMLA is sufficient to state a claim under both the interference and retaliation theory. ECF No. 27 at 11-12. Indeed, *Wysong* held that "[a]lthough [a court] analyze[s] an FMLA claim based on the interference theory differently from one based on the retaliation theory, notice pleading does not box plaintiffs into one theory or the other at the complaint stage of an FMLA action." 503 F.3d at 446. "[A]mbiguity on a plaintiff's complaint does not waive an interference claim" or a retaliation claim. *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 335 (6th Cir. 2009).

But Huffman's claim for reconsideration must be denied for two reasons. First, her amended complaint specifically identified her claim as one for interference under the FMLA, precluding reliance on *Wysong*'s pleading presumption. Second, even if Huffman had the benefit

of the *Wysong* presumption, it is inapplicable to Huffman because she failed to state a sufficient claim for retaliation at the summary judgment stage.

### A.

First, *Wysong*'s holding does not control the disposition of Huffman's amended complaint. *Wysong* held that pleading a general allegation of a violation of the FMLA does not constrain the theory on which a plaintiff may proceed. *Wysong*, 503 F.3d at 446. When a plaintiff pleads more specifically, however, such that one of the two theories under the FMLA may be clearly identified, they do not benefit from *Wysong*'s holding. *See Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282-83 (6th Cir. 2012) (holding that the essence of plaintiff Seeger's claim was retaliation, not interference, and so he did not benefit from *Wysong*'s pleading presumption). Plaintiff claims that she states a specific retaliation claim in her First Amended Complaint. ECF No. 9, ¶¶29-34.

Retaliatory discharge of an employee for the exercise of FMLA rights is protected under both FMLA theories of liability. *Seeger*, 681 F.3d at 282. The difference between a claim of discharge as a result of retaliation as opposed to interference is the proofs required. *Id*. Under the retaliation theory, the primary focus is on the question of whether the plaintiff was terminated for exercising rights under the FMLA because "retaliation claims impose liability on employers that act against employees specifically because those employees invoked their FMLA rights." *Id*. (quoting *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (internal quotation marks omitted). Nothing in Huffman's amended complaint alleges that Speedway took an adverse action because of her assertion of her rights under the FMLA. On the contrary, she claims that Defendant attempted to force her to take FMLA leave when she did not wish to, which led to Defendant "terminating Plaintiff's employment for Plaintiff's refusal to take leave

under the Act by May 4, 2013." ECF No. 9 at ¶33. She alleges that Speedway sought to be sure she knew her rights under the FMLA because they had determined she could not perform her work consistent with her doctor's prescribed physical limitations.

**B.**

But even if Huffman receives the benefit of *Wysong*'s liberal pleading standard and a vague claim for retaliation can be made out, *Wysong* is immediately distinguishable from Huffman's case. In *Wysong*, the Sixth Circuit was specifically addressing the notice required by a plaintiff at the pleading stage. *See Wysong*, 503 F.3d at 446 (". . . notice pleading does not box plaintiffs into one theory or the other *at the complaint stage* of an FMLA action.") (emphasis added). Huffman's amended complaint was dismissed following a motion for summary judgment. ECF No. 18.

*Wysong*'s pleading standard does not apply at the summary judgment stage. "The notice-pleading requirement 'is more demanding at the summary judgment stage than at earlier stages of the litigation, because by this point a plaintiff has had the opportunity to conduct discovery and to amend the complaint to reflect new theories.'" *Hoff-Pierre v. Univ. Hosp., Inc.*, 523 F. App'x 313, 314 (6th Cir. 2013) (quoting *Desparois v. Perrysburg Exempted Vill. Sch. Dist.,* 455 F. App'x 659, 665 (6th Cir.2012)). Under this heightened standard, Plaintiff's amended complaint does not make out a retaliatory discharge claim that is cognizable under the retaliation theory. As outlined above, Huffman's bare assertion that she was terminated because she refused to take FMLA leave is still cognizable as a claim of retaliatory discharge but it sounds in interference.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff Huffman's *Hirsch* Remand Motion, ECF No. 27, is **DENIED**.

Dated: November 10, 2014                                   s/Thomas L. Ludington
                                                          THOMAS L. LUDINGTON
                                                          United States District Judge

<div style="border:1px solid;">

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 10, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS

</div>